**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellant,**

v.

**Leroy W. GUATNEY, Defendant–**
**Appellee.**

No. 06CA0704.

Colorado Court of Appeals,
Div. III.

Nov. 1, 2007.

As Modified on Denial of Rehearing
Dec. 13, 2007.

Certiorari Granted May 27, 2008.

Carol Chambers, District Attorney, Andrew Cooper, Deputy District Attorney, Centennial, Colorado, for Plaintiff–Appellant.

Springer & Steinberg, P.C., Harvey A. Steinberg, Michael P. Zwiebel, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROY.

The prosecution appeals the trial court's order precluding probation revocation proceedings for defendant, Leroy W. Guatney. We affirm.

Following a trial, at which defendant testified denying the charges, he was convicted of attempted sexual assault on a child by one in a position of trust—victim under age fifteen, attempted sexual assault on a child, and indecent exposure—victim under age fifteen. Defendant appealed his conviction. *People v. Guatney*, 2006 WL 2372242 (Colo.App. No. 04CA2531, Aug. 17, 2006) (not published pursuant to C.A.R. 35(f) ) (mandate issued Dec. 12, 2006).

Defendant applied for probation pursuant to section 18–1.3–201, C.R.S.2007, which the trial court granted, sentencing him to sex offender intensive supervision probation for a period of ten years to life on the two counts of attempted sexual assault and eighteen months concurrent probation on the indecent exposure count. Defendant agreed to conditions of supervision for adult sex offenders which included the following:

> You shall attend and actively participate in a sex offender evaluation and treatment program approved by the probation officer. You will abide by the rules of the treatment program, and the treatment contract and will successfully complete the program to the satisfaction of the probation officer and the treatment provider.

Defendant entered a sex offender offense-specific treatment program. However, contrary to the rules of the treatment program, he refused to admit any guilt in conjunction with the crimes for which he had been convicted and asserted his Fifth Amendment rights to the therapist. After more than six months of treatment, and while defendant's appeal was pending, his therapist wrote a report recommending that defendant's placement in the treatment program be terminated. The therapist described how defendant had attended twenty-five sessions of offense-specific denial pretreatment and seven individual sessions that focused on the denial model. The report stated:

> Offenders who are denying their offenses are worked with in an effort to assist in breaking through their denial in order for them to be accountable for any sexually inappropriate behavior they may have displayed. This is accomplished by addressing the area of victim empathy, relapse prevention, accountability, sexual assault cycle and power and control.

> While in pre-treatment, [defendant] was compliant, cooperative, participated in group discussions and completed assignments. [Defendant] continues to deny any sexually assaultive behavior towards the victim at any time. It should be noted that [defendant] refused to discuss any issues that related to the offense that he was convicted of or any issues of his personal sexual history. He reported that he was under the instructions of his attorney not to do so.

The report recommended that defendant's probation be revoked because "[d]ue to [defendant's] continual denial[,] he is not suitable for Phase 1 sex offender's treatment." In addition, the report stated that "an offender's continual denial of the act after offense-specific denial pre-treatment is highly disempowering and emotionally damaging to

the victim and threatens community safety." Based on this report, defendant's probation officer filed a complaint to revoke sex offender intensive supervision probation.

Defendant, through counsel, objected to the probation revocation complaint, asserting that a revocation would violate defendant's Fifth Amendment right against self-incrimination. Defendant asserted that because he had testified at his trial claiming innocence, an admission of his offense could be the subject of a perjury charge, and that because his direct appeal was pending, any admission could be used to incriminate him should there be a retrial. The trial court agreed with defendant's position and concluded that "[defendant's] invocation of his Fifth Amendment rights under the United States Constitution under the circumstances of this case cannot properly be the basis of the revocation of his probation."

### I. Mootness

The trial court denied the People's request to revoke defendant's probation "while his direct appeal is pending." Subsequently, his direct appeal was completed, his conviction affirmed, and the mandate issued. *See Guatney.* We also note that the statute of limitations for perjury has expired. *See* §§ 16–5–401(1)(a), 18–8–502, C.R.S.2007. Therefore, absent an exception, this appeal is moot.

■ However, an exception to the mootness doctrine occurs when the issue presented is a matter of public importance and "is capable of repetition, yet evading review." *See Pipkin v. Brittain,* 713 P.2d 1358, 1359 (Colo.App.1985) (quoting *Goedecke v. State,* 198 Colo. 407, 410 n. 5, 603 P.2d 123, 124 (1979)). We conclude that this is such an issue, and we will review it.

### II. The Issue

■ The issue presented is whether the probation of a sex offender can be revoked based on the sex offender's invocation of his or her Fifth Amendment right against self-incrimination in a sex offender offense-specific treatment program and on the offender's refusal to admit the offense for which he or she was convicted while a direct appeal is pending and perjury charges based on the

admission could be pursued. We conclude that probation cannot be revoked on that basis.

### III. Fifth Amendment Right Against Self–Incrimination

■ "The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement...." *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). The Fifth Amendment, in relevant part, states that no person "shall be compelled in any criminal case to be a witness against himself." Under the Fifth Amendment, "[w]hen a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster" and trigger his right against self-incrimination. *Steiner v. Minnesota Life Ins. Co.,* 85 P.3d 135, 142–43 (Colo.2004) (quoting *In re Folding Carton Antitrust Litigation,* 609 F.2d 867, 871 (7th Cir.1979)); *see also Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) (the Fifth Amendment privilege covers information which would provide "a link in the chain of evidence" needed for criminal prosecution). "[A] State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135–36, 53 L.Ed.2d 1 (1977); *see also Malloy v. Hogan,* 378 U.S. at 8, 84 S.Ct. at 1493–94 ("[T]he Fifth Amendment guarantees ... the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence."). This privilege against self-incrimination does not terminate at the jailhouse door or upon acceptance of probation. *Minnesota v. Murphy,* 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409 (1984).

■ "[T]he fact of a valid conviction and the ensuing restrictions on liberty are essential to the Fifth Amendment analysis." *McKune v. Lile,* 536 U.S. 24, 36, 122 S.Ct. 2017, 2026, 153 L.Ed.2d 47 (2002). Proba-

tion is a privilege, not a right, and if a probationer violates any probationary condition, his or her probation may be revoked. *People v. Ickler*, 877 P.2d 863, 866 (Colo.1994). A sentencing court may revoke a defendant's probation for failure to complete treatment if the defendant continues to deny an element of the sex offense during sex offender specific treatment regardless of whether the defendant had entered an *Alford* plea or maintained a claim of innocence. *People v. Birdsong*, 958 P.2d 1124, 1129–30 (Colo. 1998). Colorado courts have rejected the argument that the Colorado Sex Offender Lifetime Supervision Act of 1988 is facially unconstitutional because it requires disclosures in violation of a defendant's Fifth Amendment privilege against self-incrimination. *People v. Lehmkuhl*, 117 P.3d 98, 108 (Colo.App.2004) (the defendant was convicted by a jury); *People v. Oglethorpe*, 87 P.3d 129, 136 (Colo.App.2003) (the defendant pleaded guilty and admitted committing the offense). Furthermore, the Fifth Amendment does not protect statements made when the defendant is not at risk of having the original charge reinstated or of having other charges filed. *People v. Fleming*, 3 P.3d 449, 452 (Colo.App.1999).

The issue is one of first impression in Colorado. Courts from other jurisdictions appear to be mixed on this and similar issues. *Compare Mace v. Amestoy*, 765 F.Supp. 847, 852 (D.Vt.1991) (concluding that probation may not be revoked); *James v. State*, 75 P.3d 1065, 1072 (Alaska Ct.App.2003) (extends protection through the appeal of the denial of a postconviction motion); *State v. Kaquatosh*, 600 N.W.2d 153, 158 (Minn.Ct.App.1999) (deferred prosecution, direct appeal); *State v. Imlay*, 249 Mont. 82, 813 P.2d 979, 985 (1991) (revocation of suspended sentence where protection appears to be indefinite because defendant could have moved for new trial on the grounds of newly discovered evidence or filed a postconviction motion to set aside conviction); *and State v. Schwarz*, 257 Wis.2d 40, 654 N.W.2d 438, 444–45 (2002) (direct appeal); *with Doe v. Sauer*, 186 F.3d 903, 906 (8th Cir.1999) (denial of parole is permissible if it is based on the prisoner's refusal to participate in his rehabilitation and not based on the invocation of his privilege against self-incrimination); *Asherman v. Meachum*, 957 F.2d 978, 982–83 (2d Cir.1992) (concluding home release from incarceration could be revoked, apparently as an administrative sanction for invocation of right against self-incrimination); *and United States v. Robinson*, 893 F.2d 1244, 1245 (11th Cir.1990) (probation may be revoked for failure to answer questions of probation officer relating to possible violations of the probation agreement). While there are no binding decisions directly on point, we are guided by the analysis in *Minnesota v. Murphy* and *People v. Elsbach*, 934 P.2d 877 (Colo.App. 1997).

*Minnesota v. Murphy* presented a variation on the theme. In that case, the defendant was given a suspended sentence of eighteen months incarceration and three years probation. The terms of probation required him to participate in a sex offender treatment program and answer truthfully any questions presented to him by his probation officer. In therapy, the defendant admitted an unrelated rape and murder, and that admission was relayed to the probation officer who called him in for a conference. At the conference, the probation officer did not advise the defendant of his Fifth Amendment rights, the defendant did not assert them, and the defendant answered the probation officer's questions truthfully. In subsequent criminal proceedings, the defendant moved to suppress his incriminating statements.

The Minnesota Supreme Court suppressed the statements, holding that, notwithstanding the fact that the defendant was not in custody in the traditional sense, he was compelled to attend the meeting, he was ordered to tell the truth presumably under penalty of the revocation of his probation, and the probation officer had substantial reason to believe that his answers would be incriminating. Based on those conclusions, the court held that the defendant should have been advised of his Fifth Amendment rights.

A divided United States Supreme Court disagreed. The issue there was whether the probation officer was required to advise the defendant of his Fifth Amendment rights, thus making the failure to do so a basis for

suppressing the statements. The resolution of that issue turned on whether the circumstances—the possible revocation of probation, and the serving of an eighteen-month sentence—were sufficiently coercive to render the statements involuntary. The Court answered in the negative primarily on the ground that the state never threatened a revocation of probation, which, in any event, was not automatic.

In discussing the punishment of a person for asserting his or her Fifth Amendment rights, the Court stated:

> The threat of punishment for reliance on the privilege distinguishes cases of this sort from the ordinary case in which a witness is merely required to appear and give testimony. A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. *The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.*

> Even so we must inquire whether [the defendant's] probation conditions merely required him to appear and give testimony about matters relevant to his probationary status or whether they went farther and required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent. Because we conclude that Minnesota did not attempt to take the extra, impermissible step, we hold that [the defendant's] Fifth Amendment privilege was not self-executing.

*Minnesota v. Murphy,* 465 U.S. at 435–36, 104 S.Ct. at 1146–47 (emphasis added) (footnote omitted).

Here, the privilege was asserted during the interview with the therapist, and the question is not, as it was in *Minnesota v. Murphy,* whether the Fifth Amendment privilege is self-executing. The state is not coercing a statement from defendant with the threat of a revocation of defendant's probation; instead, it is attempting to sanction him following the assertion of his constitutional rights. The important consequences here are not the revocation of probation and the serving of an eighteen-month sentence as it was in *Minnesota v. Murphy,* nor are they necessarily the possible revocation of probation and a sentence to life imprisonment. The important consequence of not asserting the privilege and making the admission is the probability that the admission would be allowed into evidence on retrial if the direct appeal is successful. Such a consequence would be daunting for a guilty person, horrific for an innocent one.

Similarly, in *People v. Elsbach* a division of this court analyzed whether a defendant's right against self-incrimination was violated by the admission of a polygraph examination at trial. In *Elsbach,* the defendant was directed by his probation officer to submit to a polygraph examination for the purpose of inquiring into uncharged incidents of sexual misconduct. The defendant complied and was subsequently charged with, tried for, and convicted of the other incidents of sexual misconduct. The defendant appealed the trial court's denial of his motion to suppress the polygraph. The division remanded the case, stating:

> If the trial court on remand determines, under the standards of *Minnesota v. Murphy* ... that defendant was, either implicitly or explicitly, threatened with revocation of his probation if he did not answer truthfully in the polygraph examination, then the motion to suppress must be granted and the judgment of conviction reversed. If the trial court determines there was no such threat, then the judgment of conviction shall stand affirmed,

subject only to defendant's right to appeal that determination.

*Elsbach,* 934 P.2d at 881.

Here, defendant had a reasonable fear of prosecution sufficient to pass constitutional muster concerning any admission to his therapist because the admission could have been used against him on retrial. In addition, he could have been subjected to charges of perjury because he had testified and denied the charges at trial. Hence defendant validly invoked his right against self-incrimination. Because of these circumstances, we conclude that the state may not revoke defendant's probation and sentence him to imprisonment for an indeterminate term for, as a maximum, the duration of his life, sections 18–1.3–903(4), 18–1.3–904, C.R.S.2007, based on defendant's invocation of his Fifth Amendment right to remain silent. Defendant faced the "classic penalty situation" that the Fifth Amendment was designed to prohibit.

We are cognizant of the prosecution's argument that these admissions were sought for therapeutic reasons, not for the purpose of self-incrimination. We are also cognizant of the state's interest in rehabilitating sex offenders because many, if not most, will ultimately be released from custody. Indeed, we recognize that this decision could have a detrimental impact on the ability of the state to administer its treatment programs because "[a]cceptance of responsibility ... demonstrates that an offender 'is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary.'" *McKune,* 536 U.S. at 36–37, 122 S.Ct. at 2026 (quoting *Brady v. United States,* 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970)). However, all attempts to solicit admissions could, arguably, be characterized as beneficial for a defendant and in the public's interest. Citizens may not be forced to incriminate themselves merely because it serves a governmental or public interest. *Lefkowitz,* 431 U.S. at 808, 97 S.Ct. at 2137.

The state also has the option, as many of the cases suggest or emphasize, to grant a defendant limited use immunity with respect to statements made during counseling, thereby removing any threat of self-incrimination. *See, e.g., Minnesota v. Murphy,* 465 U.S. at 426, 104 S.Ct. at 1141; *James,* 75 P.3d at 1071.

The prosecution argues that *McKune* provides the analytical framework under which this case should be decided. In *McKune,* an imprisoned defendant refused to participate in a sexual abuse treatment program on the ground that the required disclosures would violate his Fifth Amendment privilege against self-incrimination. The defendant faced the possibility that information provided to his hearing officer could be used against him in future criminal proceedings and that he could be subject to perjury charges. Bureau of Prisons officials informed the defendant that his refusal to participate would result in the loss of certain privileges in prison and a transfer to a maximum security unit.

Justice Kennedy, writing for a four-person plurality, concluded that the consequences facing the defendant were not serious enough to compel him to be a witness against himself.

> The consequences in question here—a transfer to another prison where television sets are not placed in each inmate's cell, where exercise facilities are not readily available, and where work and wage opportunities are more limited—are not ones that compel a prisoner to speak about his past crimes despite a desire to remain silent....
>
> ....
>
> In the present case, respondent's decision not to participate in the [sex offender treatment program] did not extend his term of incarceration. Nor did his decision affect his eligibility for good-time credits or parole. Respondent instead complains that if he remains silent about his past crimes, he will be transferred from the medium-security unit—where the program is conducted—to a less desirable maximum-security unit.

*McKune,* 536 U.S. at 36–38, 122 S.Ct. at 2026–27 (citation omitted). The plurality opinion specifically stated that "[n]or does

reducing an inmate's prison wage and taking away personal television and gym access pose the same hard choice faced by the defendant[ ] in ... *Minnesota v. Murphy*." *Id.* at 42, 122 S.Ct. at 2029 (citations omitted). Justice O'Connor, separately concurring, also emphasized the limited nature of the penalties faced by the defendant. *Id.* at 54, 122 S.Ct. at 2035 ("I do not believe the penalties assessed against respondent in response to his failure to incriminate himself are compulsive on any reasonable test. . . ."). Therefore, we conclude that *McKune v. Lile* is distinguishable from the present case because there, the defendant's exposure was to administrative or prison disciplinary actions which are, in our view, far less substantial than the possible consequences faced by defendant here.

The prosecution also argues that defendant's probation could be revoked because some of the information sought from him and which he refused to provide, such as his sexual triggers, was not "incriminating" for purposes of the Fifth Amendment. However, the trial court found that "[defendant] is in compliance with every other condition of probation except as related to an admission that he committed the acts for which he was convicted." Because this finding has support in the record, we will not disturb it on appeal. *See Cont'l W. Ins. Co. v. Jim's Hardwood Floor Co.*, 12 P.3d 824, 828–29 (Colo. App.2000).

We conclude that, absent a grant of use immunity, the state may not revoke a defendant's probation based on the assertion of his or her Fifth Amendment right against self-incrimination and the consequent refusal to admit guilt to the offense for which he is on probation while the direct appeal is pending or when he or she might be subjected to perjury charges based on any contradiction between his or her trial testimony and the admission.

The order is affirmed.

Judge TAUBMAN and Judge TERRY concur.