2013 COA 96

The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Carl Daniel RUCH, Defendant–Appellant.

Court of Appeals No. 10CA2436

Colorado Court of Appeals, Div. I.

Announced June 20, 2013

John W. Suthers, Attorney General, Wendy J. Ritz, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Michael C. Mattis, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE TAUBMAN

¶ 1 Defendant, Carl Daniel Ruch, appeals the trial court's judgment revoking his probation for his failure to (1) contact his probation officer at the times and places specified by the officer, (2) receive prior approval from his probation officer before changing his residence, (3) sign releases of information to allow his probation officer to communicate with members of the community supervision

team, and (4) attend, actively participate in, and successfully complete a sex offender treatment program approved by his probation officer. We conclude that there was sufficient evidence upon which the trial court could find that Ruch violated his probation with respect to the first three violations and that the trial court did not violate Ruch's right to counsel. However, we conclude that the fourth probation requirement violated Ruch's Fifth Amendment right against self-incrimination. Accordingly, we remand the case to the trial court to determine whether Ruch's probation would have still been revoked, and the same sentence imposed, based only on the first three violations.

## I. Background

¶ 2 In 2007, Ruch was charged with sexual assault on a child by one in a position of trust and harassment—stalking (emotional distress). Following a jury trial, Ruch was acquitted of the sexual assault charge, but was found guilty of stalking.[1]

¶ 3 The trial court sentenced Ruch to six years of intensive supervised probation. However, in January 2010, Ruch's probation officer filed a special report in the trial court requesting Ruch be ordered to comply with additional terms of probation typically imposed on sex offenders.[2]

¶ 4 In March 2010, Ruch filed a written objection to the probation officer's special report, asserting, among other things, that the requested additional terms of probation would violate his Fifth Amendment right to remain silent.

¶ 5 In April 2010, the trial court held a hearing on the special report. At the hearing, Ruch objected to the modification of the terms of his probation, but he did not invoke his Fifth Amendment right. At the conclusion of the hearing, the trial court granted the probation officer's request, and amended the terms of Ruch's probation to include,

among other things, the above listed requirements.

¶ 6 In June 2010, Ruch's probation officer moved the trial court to revoke Ruch's probation, alleging that Ruch had violated the amended conditions of his probation.

¶ 7 In August 2010, the trial court held a hearing on Ruch's alleged violations, at which it found that Ruch had violated the terms of his probation. At the conclusion of the hearing, the trial court left the terms of Ruch's probation in place until the sentencing hearing at which Ruch's probation would be revoked.

¶ 8 In October 2010, the trial court held a hearing to revoke Ruch's probation and sentence him accordingly. At the hearing, Ruch again invoked his Fifth Amendment right, asserting that revocation of his probation would violate that right. Nevertheless, the trial court revoked Ruch's probation, and sentenced him to four years in the Department of Corrections.

¶ 9 This appeal followed.

## II. Right to Counsel

¶ 10 Ruch asserts that the trial court violated his right to counsel when it required him to choose between continuing with his appointed counsel or proceeding pro se to renew his request for a continuance to allow him to seek private counsel. We disagree.

### A. Relevant Facts

¶ 11 Leading up to the hearing on Ruch's violations of his probation, between June 9 and July 1, 2010, the trial court granted Ruch three continuances to allow him to obtain private counsel. On July 1, Ruch appeared before the court with a public defender who explained that he had been provisionally appointed for the purposes of the hearing. However, he explained that Ruch still intended to hire a private attorney, but had been having trouble doing so because

---

1. A division of this court affirmed Ruch's conviction on direct appeal. *People v. Ruch*, 2012 WL 4123392 (Colo.App. No. 10CA0107, Sept. 20, 2012) (not published pursuant to C.A.R. 35(f)).

2. The probation officer based his motion on evidence of Ruch's past sexual misconduct, which was excluded at trial pursuant to CRE 404(b), and which was not provided to the probation office until after its first recommendation to the court.

of the prison's phone system. The trial court granted Ruch a fourth continuance, but explained that if he did not find counsel by July 12, it would "either appoint the public defender's office or conduct the *Arguello* [3] advisement and then set it for revocation hearing at that time."

¶ 12 On July 12, Ruch appeared before the court represented by the public defender's office, and without a private attorney. He explained that he had contacted a private attorney, but there was a conflict of interest. Thus, he requested another continuance to contact other private attorneys to whom he had been referred. The court granted a fifth continuance, noting that if Ruch did not secure private counsel by July 22, he would be forced either to continue with representation by the public defender's office or to represent himself. On July 22, Ruch still had not secured private counsel. Accordingly, at the public defender's request, the court appointed him to represent Ruch, and set the revocation hearing for August 19.

¶ 13 On August 19, the public defender informed the court that Ruch wished to terminate his services "due to ineffective assistance of counsel claims." The public defender explained that he was unaware of any conflicts in his representation. He added that Ruch did not wish to represent himself in the hearing, and thus, he "wish[ed] to have some extra time to obtain counsel." The trial court explained to Ruch the procedure applicable because he was seeking to terminate his present counsel without replacement counsel present:

> The first step in the process is for me to conduct this advisement to determine if you want to represent yourself, because by terminating the services of [the public defender], you are telling me that you want to represent yourself. I'll finish my advisement of you, and then you'll be representing yourself, and then you can certainly request of the Court a continuance.

¶ 14 The trial court then allowed Ruch to speak privately with the public defender to discuss his options. Upon returning, the public defender informed the court that Ruch "would ask the court to make a further record as to what he believes the conflict in this matter possibly is." The court granted Ruch's request, and Ruch began to explain that he believed exculpatory evidence existed, which the public defender had not pursued. The trial court warned Ruch that by discussing his conversations with the public defender in front of the prosecution, he could potentially waive his attorney-client privilege. Ruch conferred with the public defender, and then advised the court that he did not wish to waive his attorney-client privilege, and thus, he had nothing more to add.

¶ 15 The trial court responded:

> Mr. Ruch can certainly terminate [the services of the public defender] at any time he wishes if he wants to represent himself, but he does not get to pick and choose which lawyer represents him.... I've appointed counsel. I've heard nothing that would lead me to believe [counsel has] been ineffective. I wouldn't terminate [counsel's] services on those grounds. I have to terminate them on Mr. Ruch's desire to terminate them himself.

Ruch conferred with the public defender, and then informed the court that he wished to proceed with the public defender's representation.

### B. Discussion

¶ 16 "The freedom of a defendant to choose his own counsel is central to our adversarial judicial system." *People v. Maestas*, 199 P.3d 713, 716 (Colo.2009). "It long has been recognized that 'an accused who desires and is financially able should be afforded a fair opportunity to secure counsel of his own choice.'" *Anaya v. People*, 764 P.2d 779, 781 (Colo.1988) (quoting *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). However, this right is not unfettered. "Terminating counsel in order to ... switch[ ] to new counsel during a trial, for example, is subject to court approval." *Maestas*, 199 P.3d at 716–17. Similarly, "a defendant cannot utilize his right to counsel of choice for improper purposes, such as attempting to delay proceedings or to 'impede [the] efficient administration of jus-

---

**3.** *See People v. Arguello*, 772 P.2d 87 (Colo.  1989).

tice.'" *Id.* at 717 (quoting *People v. Mogul*, 812 P.2d 705, 708 (Colo.App.1991)).

### 1. Request for Continuance

¶ 17 Ruch asserts that the trial court impermissibly conditioned consideration of his request for a continuance on the waiver of his right to counsel. We disagree.

¶ 18 Defendants may discharge their attorneys at will. *People v. Munsey*, 232 P.3d 113, 126 (Colo.App.2009). However, a request for a continuance to seek new counsel will be granted only if it is timely and not made for improper purposes, as noted above. *Id.*; *see also People v. Brown*, 328 P.3d 187, 189 (Colo.App.2011) (*cert. granted* Apr. 23, 2012). We review a trial court's decision whether to grant a continuance in these circumstances for an abuse of discretion. *People v. Denton*, 757 P.2d 637, 638 (Colo.App.1988). There is no precise test to determine whether a trial court abuses its discretion by denying a request for a continuance. *People v. Hampton*, 758 P.2d 1344, 1353 (Colo.1988). Instead, "[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.* at 1353–54 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)). "Further, although a trial court's denial of a continuance to discharge or substitute counsel may implicate the Sixth Amendment right to counsel, no abuse of discretion will be found unless the denial is so arbitrary as to deny the accused due process of law." *Denton*, 757 P.2d at 638.

¶ 19 On appeal, Ruch asserts that the proper course for the trial court in this situation was "not ... to determine whether substitute counsel was warranted," but rather "to determine whether Mr. Ruch was entitled to a continuance." *See Brown*, 328 P.3d at 189–90. We agree, and conclude that the trial court did precisely that.[4]

¶ 20 While still represented by the public defender, Ruch requested the court to grant a sixth continuance in order for him to obtain private counsel. In response, the trial court told Ruch that he could either (1) continue with his appointed public defender or (2) terminate the public defender, continue pro se, and renew his request for a continuance once he was representing himself. In doing so, the trial court necessarily denied Ruch's initial request for a continuance to seek private counsel while still represented by the public defender, but offered to reconsider the denial if Ruch decided to continue pro se. We conclude the court did not abuse its discretion in denying the initial request for a continuance under these circumstances.

¶ 21 During the hearing on July 12, 2010, Ruch asked the court to grant a continuance for the fourth time to allow him to obtain private counsel. The trial court granted his request, but noted that he had already had approximately one month to find counsel and had failed to do so. It added that it did not "think the matter should languish any longer," and repeatedly advised Ruch that if he failed to find private counsel by the next hearing, he would be forced to choose between representing himself and continuing with the public defender. Despite these admonitions, the court granted Ruch a fifth continuance to the date of the next hearing. Accordingly, we conclude that the trial court could reasonably infer that the purpose of Ruch's sixth request to seek private counsel was to delay or impede the proceedings.

¶ 22 Further, although Ruch alleged that his public defender was ineffective, upon inquiry of the court, the public defender disagreed and Ruch presented no substantial contrary evidence or argument.

¶ 23 Accordingly, we conclude that, under these circumstances, the trial court did not abuse its discretion by denying Ruch's sixth request for a continuance on August 19. *Cf. Brown*, 328 P.3d at 192 (trial court abused its discretion when it denied defendant's first request for a continuance to seek private counsel).

---

4. In doing so, we reject Ruch's assertion that the trial court conditioned its consideration of Ruch's request for a continuance on the waiver of Ruch's right to counsel. Rather, the court effectively denied the continuance while Ruch was still represented, but advised him that it would be willing to reconsider the request if Ruch decided to proceed pro se.

### 2. Conflict of Interest

¶ 24 Ruch additionally asserts that the trial court impermissibly conditioned consideration of his ineffective assistance of counsel allegations on his complete waiver of his attorney-client privilege. We disagree.

¶ 25 Where a criminal defendant requests the court to appoint alternative counsel, based on claims of ineffective assistance, the trial court is obligated to conduct a thorough inquiry into the alleged ineffective assistance. *See People v. Bergerud*, 223 P.3d 686, 705–06 (Colo.2010).

¶ 26 Here, however, Ruch requested to terminate his appointed counsel and to have additional time to obtain retained counsel. Although he could have asked the court to appoint alternative counsel, he did not do so. Ruch cited ineffective assistance of counsel as the reason he wished to terminate the public defender. In deciding whether to grant Ruch a continuance, the trial court inquired into the alleged ineffective assistance allegations, but warned Ruch that he was still in the presence of the prosecutor, and therefore should be careful not to say anything that would waive his attorney-client privilege. The trial court did not offer to hold a hearing outside of the presence of the prosecutor sua sponte. *Cf. id.* at 705 (where defendant requests the court to appoint alternative defense counsel, the trial court should inquire into the ineffective assistance allegations outside the presence of the prosecution).

¶ 27 Because Ruch requested only a continuance, we conclude that the trial court was not required to entertain Ruch's ineffective assistance allegations to the same extent that it would if he had requested alternative appointed counsel. Accordingly, we conclude that the trial court's inquiry into the alleged ineffective assistance claim was sufficient under the circumstances and therefore did not violate Ruch's right to counsel. Consequently, we conclude that the trial court did not condition consideration of the ineffective assistance allegations on Ruch's waiver of his attorney-client privilege.

### III. Change in Residence

¶ 28 Ruch asserts that the trial court erred in finding that he had changed residences without the approval of his probation officer, because insufficient evidence was presented during the hearing to prove he had moved. We disagree.

### A. Relevant Facts

¶ 29 Approximately two months before Ruch's August 2010 hearing, one of Ruch's probation officers, Rachelle Boespflug, filed an amended complaint for revocation of probation, which alleged the following:

[Ruch] reported to [Boespflug] that he was residing at [a particular address]. On May 19, 2010, [Boespflug] received information from the Douglas County Sheriff's Department that [Ruch's] roommate told them [Ruch] packed his belongings and left and he was no longer residing there.

¶ 30 At the August hearing, Boespflug's testimony provided the only evidence to prove these allegations. The testimony consisted almost exclusively of triple hearsay.[5] On cross-examination, Boespflug admitted that she did not know the identity of the deputy, or the name of the person who claimed to be Ruch's roommate.

¶ 31 Based on the above evidence, the trial court found that the prosecution had proved by a preponderance of the evidence that Ruch had changed residences without first obtaining permission from his probation officer.

### B. Discussion

¶ 32 Revocation of a defendant's probation involves a two-step process. First, the trial court must determine whether the defendant violated the conditions of his or her probation. *People v. Ickler*, 877 P.2d 863, 866 (Colo.1994). "The question whether probation has been violated is one of fact for the trial court, to be determined under the preponderance of the evidence standard." *People v. Elder*, 36 P.3d 172, 173 (Colo.App. 2001). Second, if the trial court determines

---

5. Boespflug testified that the district attorney's office informed her that the sheriff's deputy spoke with Ruch's roommate, who said that Ruch had moved.

that the defendant violated the terms of probation, it then has the discretion to revoke probation based on the violation. *Id.* "A decision to revoke probation will not be disturbed unless the trial court's judgment is against the manifest weight of the evidence." *Id.* at 174.

■■■ ¶ 33 The revocation of probation is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a prosecution does not apply to probation revocations. *People v. Loveall,* 231 P.3d 408, 414 (Colo.2010). Therefore, a lower standard of due process is required compared to a criminal trial. *Id.* Thus,

> only the following due process requirements at probation revocation hearings are required: (1) written notice of the alleged probation violations; (2) disclosure to the probationer of evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; and (5) a written or oral statement on the record made by the fact finder as to the evidence relied on and the reasons for revoking probation.

*Byrd v. People,* 58 P.3d 50, 56 (Colo.2002).

¶ 34 Under this standard, Colorado courts have repeatedly held that hearsay evidence is admissible in probation revocation proceedings. *See Loveall,* 231 P.3d at 414; *Byrd,* 58 P.3d at 56; *People v. Moses,* 64 P.3d 904, 908 (Colo.App.2002); *see also* § 16–11–206(3), C.R.S. 2012 (hearsay is admissible in a probation revocation hearing). However, hearsay evidence is only admissible if the defendant has a fair hearing and is afforded the opportunity to rebut the hearsay evidence. § 16–11–206(3); *Byrd,* 58 P.3d at 56.

¶ 35 In *Loveall,* the trial court admitted hearsay evidence to prove that the defendant had violated the terms of his probation. 231 P.3d at 411. However, the prosecution did not provide the defendant with the identities of the hearsay declarants until the morning of the hearing. *Id.* On appeal, the defendant asserted that his ability to rebut the hearsay

evidence was impaired because he was unaware of the declarants' identities until the day of the hearing and was not advised of the content of the hearsay. Thus, he asserted that the introduction of the evidence violated his due process rights. *Id.* at 414.

¶ 36 The supreme court agreed:

> "[A] defendant's due process right is satisfied by subjecting the probation officer to cross-examination about proffered hearsay and affording the [probationer] an opportunity to present witnesses and testify in his or her own behalf." However, the impact of these techniques is greatly diminished—if not eradicated entirely—where the defendant is given little or no opportunity to test the accuracy of the hearsay evidence or the credibility of the declarants from whom it was gleaned.

*Id.* at 415 (citation omitted) (quoting in part *People v. Manzanares,* 85 P.3d 604, 610 (Colo.App.2003)). Therefore, the supreme court held that the admission of hearsay evidence in a probation revocation proceeding, without prior notice to the defendant regarding the content of the hearsay and the identity of the declarant, violates a defendant's due process rights. *Id.* at 416.

¶ 37 Here, Ruch was never provided the identity of the sheriff's deputy. However, the amended probation revocation complaint stated that Ruch's roommate was the declarant of the incriminating information. Accordingly, unlike in *Loveall,* Ruch had notice of the identity of the declarant and the content of the hearsay. Thus, we conclude that prior to the hearing, Ruch had sufficient information to allow him to effectively rebut the hearsay testimony through cross-examination or presentation of his own witnesses.[6] Therefore, the trial court properly considered the hearsay evidence.

¶ 38 Ruch asserts, however, that even if the hearsay evidence was admissible, triple hearsay evidence alone is insufficient to prove that he violated the conditions of his probation. To support this assertion, Ruch

---

6. Although Ruch was never provided the identity of the sheriff's deputy, we conclude that this information was not necessary for Ruch to effectively rebut Boespflug's testimony because Ruch

had the opportunity to attack the veracity of the original incriminating statement made by his roommate.

cites cases holding that prosecutors may not rely solely on hearsay evidence to prove probable cause in a preliminary hearing when the declarant is available to testify. *See People v. Horn*, 772 P.2d 108 (Colo.1989); *Maestas v. District Court*, 189 Colo. 443, 541 P.2d 889 (1975); *People v. Huggins*, 220 P.3d 977 (Colo.App.2009). Specifically, Ruch asserts that because probable cause requires a less demanding evidentiary standard than the preponderance of the evidence standard applicable in probation revocation proceedings, it logically follows that a violation of the terms of probation could likewise not be proven through triple hearsay, standing alone. We conclude, however, that these cases are distinguishable.

¶ 39 The purpose of a preliminary hearing is to determine whether probable cause exists to believe that the defendant committed the crime charged. *People v. Scott*, 785 P.2d 931, 933 (Colo.1990). Thus, a preliminary hearing is part of a criminal prosecution and will determine whether a particular defendant will be tried.

¶ 40 A revocation of probation hearing, in contrast, is not part of a criminal prosecution, and the State has an " 'overwhelming interest' in returning an individual to prison without the burden and associated costs of mounting a new criminal trial." *Loveall*, 231 P.3d at 414 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 483, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Therefore, a defendant's due process rights during a probation revocation hearing are less than his or her rights during a preliminary hearing. *See Byrd*, 58 P.3d at 56 ("the rights extended to a probationer are significantly reduced when compared to the accused facing criminal charges").

¶ 41 Here, Ruch's violation was proven through triple hearsay. However, his due process rights were protected by his opportunity to effectively rebut the hearsay, including the ability to attack the credibility of the statement made by the declarant, Ruch's roommate, through cross-examination or presentation of other evidence. Therefore,

although triple hearsay evidence alone may be insufficient to prove probable cause during a preliminary hearing, we conclude that under the circumstances presented here, the triple hearsay evidence was sufficient to prove, by a preponderance of the evidence, that Ruch changed residences without obtaining permission from his probation officer.[7]

### IV. Failure to Attend Counseling

¶ 42 Ruch asserts that the trial court erred by revoking his probation based on his refusal to attend offense specific treatment (counseling). Specifically, he asserts that, by requiring him to attend counseling while his appeal was pending, the trial court violated his Fifth Amendment right against self-incrimination. The prosecution, however, asserts that the trial court did not violate Ruch's Fifth Amendment right because he did not invoke it. Thus, by implication, the People assert that Ruch waived his Fifth Amendment right. We disagree with the prosecution, and conclude, first, that the record indicates that although Ruch never attended counseling, he expressly invoked his Fifth Amendment right and did not waive it. Second, we conclude that the trial court violated Ruch's Fifth Amendment right by revoking his probation based on his failure to attend counseling.

#### A. Standard of Review

¶ 43 We review de novo a defendant's assertion that the trial court violated his or her privilege against self-incrimination. *People v. McBride*, 228 P.3d 216, 227 (Colo.App. 2009).

#### B. Relevant Facts

¶ 44 During the hearing on the probation officer's January 2010 special report, Ruch's probation officer stated that under the proposed amended terms, Ruch would be required to attend offense specific treatment.

¶ 45 The Sex Offender Management Board (SOMB) *Standards and Guidelines for the Assessment, Evaluation, Treatment, and Be-*

---

7. In reaching this conclusion, we express no opinion as to whether triple hearsay or even

more remote levels of hearsay could be sufficient in other cases to establish a probation violation.

*havioral Monitoring of Adult Sex Offenders* (Nov. 2011) (*The Guidelines*) define offense specific treatment.[8] *The Guidelines* provide that an offender who refuses to admit to the conduct giving rise to his or her conviction, for more than three months in counseling, "shall be terminated from treatment and revocation proceedings should be initiated." The Guidelines at 47, § 3.550.

¶ 46 As noted earlier, Ruch challenged the probation officer's special report in a written objection in March 2010. The objection invoked Ruch's Fifth Amendment right, asserting that the counseling would require him to admit to the conduct giving rise to his conviction. Because his direct appeal was still pending, Ruch asserted that any admissions would be incriminating and could be used against him should he be granted a new trial.

¶ 47 At the April 2010 hearing on the probation officer's special report, Ruch's probation officer testified that under the amended terms, and pursuant to *The Guidelines*, Ruch would be required to admit to the conduct giving rise to his stalking charge in order to successfully complete the counseling. She stated that if Ruch did not admit to the charged conduct within the first three months of his counseling, she would move to revoke his probation. At this hearing, Ruch did not orally object to the proposed probation counseling requirement based on his Fifth Amendment right to remain silent.

¶ 48 Following the hearing, the trial court granted the probation officer's request in the special report, and sentenced Ruch to attend counseling, among other things. Subsequently, Ruch's probation officer moved to revoke Ruch's probation, in part, based on his failure to enroll in or attend counseling. In October 2010, after the trial court found that Ruch violated the terms of his probation, but before it revoked probation, Ruch renewed his objection to revocation based on his failure to attend counseling, arguing that the revocation would violate his Fifth Amendment right.

### C. Discussion

¶ 49 The Fifth Amendment of the United States Constitution protects an individual "from having to testify in any way which might tend to subject himself [or herself] to criminal liability." *Steiner v. Minnesota Life Ins. Co.,* 85 P.3d 135, 139 (Colo. 2004); *see also* U.S. Const. amend. V. The Fifth Amendment privilege against self-incrimination is binding on the states by virtue of the Due Process Clause of the Fourteenth Amendment. *See Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *People v. Taylor,* 41 P.3d 681, 689 (Colo. 2002).

#### 1. Invocation and Waiver of Fifth Amendment Right

¶ 50 Probationers retain their right against self-incrimination under the Fifth Amendment. *People v. Elsbach,* 934 P.2d 877, 881 (Colo.App.1997). However, the right against self-incrimination is not self-executing, and thus, a probationer must invoke his or her right in order for it to apply. *Id.* Similarly, the right may only be invoked when the person asserting the right faces a real danger of compelled self-incrimination. *See People v. Blackwell,* 251 P.3d 468, 474 (Colo.App.2010). Thus, in the probation context, "[i]f, as a condition of probation, a probationer is required to participate in therapy which involves truthfully answering questions designed to solicit incriminating responses, no Fifth Amendment violation occurs unless 'the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation.'" *Elsbach,* 934 P.2d at 881 (quoting *Minnesota v. Murphy,* 465 U.S. 420, 435, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984)).

¶ 51 In *United States v. Antelope,* 395 F.3d 1128, 1131 (9th Cir.2005), the trial court repeatedly sentenced the defendant to probation terms that required him to disclose his "full sexual history" as a part of his counsel-

---

**8.** The General Assembly created the SOMB as a means of managing the evaluation and treatment of sex offenders. *People v. Brosh,* 251 P.3d 456, 460 (Colo.App.2010); *see also* § 16–11.7–103(1), C.R.S. 2012. Among other things, the SOMB is tasked with "develop[ing], implement[ing], and revis[ing], as appropriate, guidelines and standards to treat adult sex offenders." § 16–11.7–103(4)(b), C.R.S. 2012.

ing. Each time the court sentenced the defendant, he objected to the terms of the probation, asserting that they violated his Fifth Amendment right against self-incrimination by requiring him to disclose potentially incriminating information about his past sexual acts without immunity. *Id.* at 1131–32. The trial court denied the defendant's objections.[9] *Id.* Subsequent to each sentencing, the defendant refused to participate in the required counseling, and the trial court thus revoked his probation. *Id.*

¶ 52 On appeal, the Ninth Circuit held that because the evidence established that the terms of the defendant's probation required him to admit to his entire past sexual history, a "real and appreciable" danger of self-incrimination existed at the time of sentencing. *Id.* at 1135. Thus, the court found that the defendant's objection at the time of sentencing was sufficient to invoke his rights. *Id.* The court then held that by revoking the defendant's probation based on his refusal to attend the required counseling session, the trial court imposed a substantial penalty on the defendant for invoking his rights, and thus violated the defendant's Fifth Amendment right against self-incrimination. *Id.* at 1138; *see also Murphy*, 465 U.S. at 435, 104 S.Ct. 1136.

¶ 53 Here, the prosecution asserts that "there is no evidence in the record that [Ruch] ever attended the treatment program, let alone that he was questioned in a manner that would have required him to incriminate himself, or that he ever invoked his Fifth Amendment protections." While we agree that there is no evidence that Ruch attended counseling, we disagree that he failed to invoke his Fifth Amendment right.

¶ 54 As in *Antelope*, the record here contains ample evidence that if Ruch had fully complied with the terms of his probation, he would have been required to incriminate himself by admitting guilt while his direct appeal was still pending. 395 F.3d at 1135. The probation officer's request to amend the

probation terms to require counseling, as well as section 3.550 of *The Guidelines*, made Ruch aware that he would be required to admit guilt or otherwise face revocation of his probation. The probation officer's testimony confirmed this fact. Therefore, we conclude that a real and appreciable danger existed at the time Ruch objected to the proposed terms of his probation. Accordingly, under the circumstances presented here, Ruch was not required to wait until a counselor asked an incriminating question to raise his Fifth Amendment objection. Rather, he was only required to raise his objection once it became known that the terms of his probation required him to incriminate himself or otherwise risk revocation. Accordingly, we conclude that Ruch invoked his Fifth Amendment privilege against self-incrimination.

¶ 55 We further conclude that Ruch did not waive his privilege against self-incrimination by failing to reiterate his constitutional objection to the terms of his probation during the April 2010 probation revocation hearing.

■ ¶ 56 Once a defendant invokes his or her right to remain silent, that right continues in effect until specifically waived by the defendant. *See People v. Arroya*, 988 P.2d 1124, 1130 (Colo.1999) (discussing the right to remain silent during custodial interrogations). When analyzing whether a defendant waived his or her constitutional rights, "courts ' "indulge every reasonable presumption against waiver" of fundamental constitutional rights,' " including the right to remain silent. *Schriro v. Landrigan*, 550 U.S. 465, 484, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); *see also Roelker v. People*, 804 P.2d 1336, 1341 (Colo.1991) ("The courts do not presume acquiescence in the loss of fundamental constitutional rights, and therefore indulge every reasonable presumption against waiver.") (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo.1984)).

9. The trial court reasoned that any incriminating statements made during counseling would be protected by the state's counselor-patient privilege. *Antelope*, 395 F.3d at 1131. This conclusion, however, was contradicted by the counselor's testimony that he would be required

to report any past sexual incidents involving minors. *Id.* The trial court also found the defendant's objections not ripe, and concluded that he was required to assert his privilege at the time incriminating questions were asked. *Id.* at 1132.

¶ 57 In *Palmer v. People,* 680 P.2d 525, 526 (Colo.1984), the defendant stated to the trial court that he wished to testify on his own behalf. However, after a two-hour recess, the defendant failed to reiterate his request. *Id.* In analyzing whether the defendant's subsequent silence constituted a waiver of his right to testify, the supreme court held that "[f]ailure to reiterate assertion of a right does not constitute waiver." *Id.* at 527. Rather, a trial court may only conclude that a defendant waived his or her fundamental constitutional rights if the surrounding circumstances demonstrate that he or she did so voluntarily, knowingly, and intelligently. *Id.*; *see also People v. Mozee,* 723 P.2d 117, 123 (Colo.1986) (a defendant's waiver of his or her right to remain silent must be voluntary, knowing, and intelligent).

¶ 58 As discussed above, Ruch properly invoked his Fifth Amendment right against self-incrimination in March 2010, in his opposition to the proposed terms of probation. His invocation was clear and unambiguous and alerted the trial court to his desire to remain silent in the face of incriminating questioning. Immediately prior to the court's revocation of his probation, in October 2010, Ruch again objected to the court's actions based on his Fifth Amendment right. In light of these two express invocations, and applying every reasonable presumption against waiver, we conclude that Ruch's failure to expressly raise his Fifth Amendment right during the April 2010 probation revocation hearing did not constitute a knowing, intelligent, and voluntary waiver of his right to remain silent. *Schriro,* 550 U.S. at 484, 127 S.Ct. 1933; *Mozee,* 723 P.2d at 123; *see also Arroya,* 988 P.2d at 1130 ("[o]nce a criminal suspect invokes his right to remain silent, the police must 'scrupulously honor' the assertion of this right"); *People v. Redgebol,* 184 P.3d 86, 99 (Colo.2008) (once a suspect invokes his or her Fifth Amendment right to counsel, the invocation must be fully honored unless the defendant affirmatively

waives his or her right by reinitiating police interrogation). Thus, Ruch's failure to reinvoke his Fifth Amendment right during the April 2010 hearing did not constitute a waiver of that right. *Palmer,* 680 P.2d at 527.

### 2. Violation of Ruch's Fifth Amendment Right

¶ 59 Having concluded that Ruch sufficiently invoked, and did not waive, his Fifth Amendment right, we further conclude that the trial court violated that right by relying on Ruch's failure to enroll in and attend the counseling when it revoked his probation.[10] *Antelope,* 395 F.3d at 1138.

¶ 60 The reasoning in *People v. Guatney,* 183 P.3d 620 (Colo.App.2007) (*Guatney I*), further supports our conclusion. There, the relevant terms of Guatney's probation were identical to Ruch's probation terms, and required him to participate and complete a sexual offender counseling program. *Id.* at 621. Guatney attended the counseling sessions, but refused to admit to the charged conduct. *Id.* Accordingly, "[a]fter more than six months of treatment, and while [Guatney's] appeal was pending, his therapist wrote a report recommending that [his] placement in the treatment program be terminated." *Id.* Based on the report, Guatney's probation officer moved to revoke his probation. *Id.* at 622. However, the trial court concluded that revoking Guatney's probation would violate his Fifth Amendment privilege against self-incrimination. *Id.* Specifically, the trial court noted that because Guatney's underlying criminal case was on direct appeal, any admission of guilt during the counseling program could be used against him, should he be retried. *Id.*

¶ 61 The prosecution appealed the trial court's order, and a division of this court, relying on *Murphy,* 465 U.S. at 435–36, 104 S.Ct. 1136, held "that, absent a grant of use immunity, the state may not revoke a defen-

---

10. To the extent that the trial court concluded that Ruch refused to attend counseling based on his general lack of cooperation, rather than a refusal to incriminate himself, we reject that conclusion as clearly erroneous. *See generally Sanchez–Martinez v. People,* 250 P.3d 1248, 1254 (Colo.2011) ("We defer to the trial court's find-

ings of fact unless they are so clearly erroneous as to find no support in the record."). The record supports a conclusion that Ruch was uncooperative as to following other terms of his probation. However, his objection to the counseling was based on his previously asserted refusal to incriminate himself.

dant's probation based on the assertion of his or her Fifth Amendment right against self-incrimination and the consequent refusal to admit guilt to the offense for which he is on probation while the direct appeal is pending." *Id.* at 626.

¶ 62 On grant of certiorari, the Colorado Supreme Court vacated the division's opinion in *Guatney I. People v. Guatney*, 214 P.3d 1049 (Colo.2009) (*Guatney II*). The supreme court held that the order declining to revoke Guatney's probation was not a final judgment, and therefore the division lacked jurisdiction to address the merits of the appeal. *Id.* at 1050. The supreme court did not otherwise address the merits of the *Guatney I* decision.

¶ 63 We recognize that *Guatney I* carries no precedential value following the supreme court's decision to vacate the opinion. Nevertheless, we find the reasoning in *Guatney I* and *Antelope* persuasive and adopt it here. Accordingly, we conclude that by considering Ruch's refusal to attend counseling as one ground for revoking his probation, the trial court violated his Fifth Amendment right.[11]

### V.  Remedy

¶ 64 Because the trial court erroneously considered Ruch's refusal to attend offense specific counseling as one ground for revoking his probation, we must now determine the appropriate remedy.

¶ 65 Any single probation violation can justify a trial court's decision to revoke probation. *Loveall,* 231 P.3d at 416. However, where a trial court revokes probation based on multiple violations, and we reverse its conclusion with respect to one violation, we can only affirm its decision if " 'the record clearly shows the trial court would have reached the same result' even without considering the [reversed violation]." *People v. Lientz,* 2012 COA 118, ¶ 9, 317 P.3d 1215 (quoting *Loveall,* 231 P.3d at 416).

¶ 66 Here, as noted, we conclude that the trial court could have properly revoked

Ruch's probation based on his failure to (1) contact his probation officer at the times and places specified by the officer, (2) receive approval from his probation officer prior to changing his residence, and (3) sign releases of information to allow his probation officer to communicate with members of the community supervision team. However, the record is not clear whether the trial court would have revoked Ruch's probation and imposed the same sentence based on these three violations alone. *See Loveall,* 231 P.3d at 416. Accordingly, we remand for further findings. *See id.* at 417 n. 13.

¶ 67 On remand, the trial court should hold a hearing to determine whether Ruch's probation officer would have still sought to revoke Ruch's probation based solely on the remaining three violations. *See id.* at 416 ("it is undeniably true that any single probation violation could justify a district court's decision to revoke; however, it is substantially less clear whether the probation officer *would* exercise his or her discretion to seek revocation") (emphasis in original). If the trial court determines that the probation officer would have still moved to revoke Ruch's probation, then it shall determine whether, based on the remaining three violations, it would still have revoked Ruch's probation. If its answer to this question is in the negative, or if it finds that the probation officer would not have moved for revocation, its revocation order shall be reversed. However, if it determines that the probation officer would have moved to revoke probation, and that it would have granted that motion without the reversed violation, its order shall stand affirmed, subject to Ruch's right to appeal that determination.

¶ 68 The case is remanded as directed.

JUDGE GRAHAM and JUDGE HAWTHORNE concur.

---

11. Our holding is limited to a defendant's assertion of his or her Fifth Amendment right against self-incrimination in a probation revocation proceeding while a direct appeal is pending in which the defendant has sought a new trial. We need not consider whether the same result would apply when a defendant is seeking or may seek postconviction relief.