The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

2016 CO 35
Supreme Court Case No. 13SC587
Certiorari to the Colorado Court of Appeals
Court of Appeals Case No. 10CA2436
Petitioner:
The People of the State of Colorado,
v.

Respondent:
Carl Daniel Ruch.
Order Reversed
en banc
May 16, 2016
Attorneys for Petitioner:
Cynthia H. Coffman, Attorney General
Wendy J. Ritz, First Assistant Attorney General
Denver, Colorado
Attorneys for Respondent:
Douglas K. Wilson, Public Defender
Michael C. Mattis, Deputy Public Defender
Denver, Colorado
JUSTICE GABRIEL delivered the Opinion of the Court

¶1      This case requires us to determine whether the trial court properly revoked respondent Carl Daniel Ruch’s probation for, among other things, refusing to enroll or participate in sex offender treatment based on his concern that in the course of such treatment, he would have been compelled to incriminate himself in violation of the Fifth Amendment.
¶2      As a condition of probation, the trial court ordered Ruch to complete a sex offender polygraph and participate in sex offense specific treatment intervention. Ruch, however, refused to enroll or participate in such treatment, contending that participating would have violated his privilege against self-incrimination.
¶3      As a result of Ruch’s refusal to enroll or participate in treatment, as well as his violations of certain other probation conditions, the trial court revoked Ruch’s probation and sentenced him to a prison term. A division of the court of appeals concluded, however, that on the facts of this case, revoking Ruch’s probation based on his refusal to attend sex offender treatment violated his Fifth Amendment rights. The division thus remanded the case to the trial court to determine whether Ruch’s probation officer would have sought to revoke Ruch’s probation based solely on the remaining probation violations and, if so, whether the court would have revoked Ruch’s probation on those grounds.
¶4      We reverse. Unlike the division, we perceive no Fifth Amendment violation here, where the trial court revoked Ruch’s probation based on his total refusal to attend treatment. In these circumstances, Ruch’s purported invocation of his Fifth Amendment rights was premature and amounted to a prohibited blanket assertion of the privilege.
¶5      Accordingly, we hold that the trial court properly revoked Ruch’s probation based on his refusal to attend treatment, and we remand this case with instructions that the trial court’s order be reinstated.
I. Facts and Procedural History
¶6      In the spring and summer of 2007, Ruch repeatedly contacted and sent unwanted text messages to the fifteen-year-old victim, who was on the same high school cheerleading team as Ruch’s daughter (Ruch was the president of the booster club for the team). The victim eventually reported these contacts to the police and also alleged that Ruch had touched her butt during a party at his home.
¶7      As a result of these allegations, Ruch was charged with sexual assault on a child by one in a position of trust and harassment—stalking (causing emotional distress). The case ultimately proceeded to trial, where the jury found Ruch not guilty of the sexual assault charge but guilty of the stalking charge.
¶8      Prior to sentencing, the trial court ordered Ruch to undergo a psychosexual evaluation, which the court said would provide it with information to consider at sentencing. Ruch participated in the evaluation, and the evaluator found him to be cooperative but cautious and at times evasive.
¶9      The case proceeded to sentencing, and at the sentencing hearing, Ruch’s counsel explained that Ruch had been cautious in discussing the charged conduct because he was contemplating an appeal. Accordingly, during the evaluation, he was trying to balance his court-ordered obligation to cooperate with his Fifth Amendment right to remain silent, about which counsel had advised him.
¶10       The court sentenced Ruch to ninety days in the county jail and six years of intensive supervision probation (“ISP”). The initial probation conditions did not include a requirement of sex offender treatment. Subsequently, however, the probation department asked the court to add additional conditions of probation for sex offenders. Among these proposed conditions were requirements that Ruch complete a sex offender polygraph and participate in sex offense specific treatment intervention. The court granted the department’s request and added these conditions.
¶11      Thereafter, Ruch filed a written objection to the additional conditions. In his objection, Ruch argued that (1) his treatment program would require him to admit to a sexual offense; (2) if he did not eventually do so, he would be terminated from the treatment program, which would constitute a violation of the terms and conditions of his ISP; (3) he had a Fifth Amendment right to remain silent during the pendency of his direct appeal; and (4) were he to speak about any aspect of this case, it could be used against him in any possible future trial. He thus requested that the court strike the additional conditions or hold them in abeyance until his direct appeal and any new trial that might result were completed.
¶12       The trial court subsequently set a hearing on Ruch’s objection. At this hearing, Ruch’s probation officer testified that under the Sex Offender Management Board standards in effect at that time, probationers were allowed to deny committing the offenses for which they were convicted for the first three months that they were in sex offender treatment. If after these three months, the probationers were still in denial, then the probation department would file a complaint to revoke probation.
¶13       The court reaffirmed its prior order that Ruch’s probation include the additional conditions, effectively overruling Ruch’s objection to those conditions. Ruch then signed a form agreeing to the additional conditions, including the condition that he attend and actively participate in sex offender evaluation and treatment.
¶14       Thereafter, the probation department filed a complaint and an amended complaint to revoke Ruch’s probation. The department alleged that Ruch had committed four probation violations, including failing to enroll in sex offender treatment. After a hearing, the court found that Ruch had committed all four of the alleged violations, and it ultimately revoked Ruch’s probation and sentenced him to four years in the Department of Corrections.
¶15       Ruch appealed, arguing, as pertinent here, that by requiring him to attend treatment while his appeal was pending, the trial court had violated his Fifth Amendment right against self-incrimination. People v. Ruch, 2013 COA 96, ¶ 42, ___ P.3d ___. The People responded that the trial court did not violate Ruch’s Fifth Amendment right because he did not properly invoke that right. Id. 
¶16       The division agreed with Ruch. Id. As pertinent here, the division first concluded that Ruch had properly invoked his Fifth Amendment right against self-incrimination:

[U]nder the circumstances presented here, Ruch was not required to wait until a counselor asked an incriminating question to raise his Fifth Amendment objection. Rather, he was only required to raise his objection once it became known that the terms of his probation required him to incriminate himself or otherwise risk revocation.

Id. at ¶ 54.
¶17       Having concluded that Ruch had sufficiently invoked his Fifth Amendment right, the division proceeded to consider whether the trial court had violated that right when it based its decision to revoke Ruch’s probation, in part, on Ruch’s decision not to enroll in and attend treatment. Id. at ¶¶ 59–63. The division began by discussing a prior division’s analysis in People v. Guatney, 183 P.3d 620 (Colo. App. 2007), vacated, 214 P.3d 1049 (Colo. 2009). Ruch, ¶¶ 60–63. In Guatney, 183 P.3d at 626, the division had concluded that absent a grant of use immunity, the state could not revoke a defendant’s probation based on his or her invocation of the Fifth Amendment right against self-incrimination and the consequent refusal to admit guilt to the offense for which he or she was on probation while a direct appeal was pending. Recognizing that this decision was not precedential because it had been vacated on jurisdictional grounds, the division found its reasoning persuasive and chose to follow it. Ruch, ¶ 63. Thus, the division concluded that by considering Ruch’s refusal to attend treatment as one ground for revoking his probation, the trial court had violated Ruch’s Fifth Amendment right against self-incrimination. Id. Accordingly, the division remanded the case to the trial court to determine whether Ruch’s probation officer would have sought to revoke Ruch’s probation based solely on the remaining probation violations and, if so, whether the court would have revoked Ruch’s probation on those grounds. Id. at ¶ 67.
¶18      We granted the People’s petition for certiorari. 1
II. Standard of Review
¶19       We review de novo the application of the Fifth Amendment to the undisputed facts in this case. See People v. Roberson, 2016 CO 36, ¶ 20, ___ P.3d j see also People v. Matheny, 46 P.3d 453, 462 (Colo. 2002) (“[L]aw application, which involves the application of the controlling legal standard to the facts established by the evidence and found by the trial court is a matter for de novo appellate review, at least where constitutional rights are concerned.”).

III. Analysis

¶20       The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, see Malloy v. Hogan, 378 U.S. 1, 6 (1964), guarantees that no person “shall be compelled in any criminal case to be a witness against himself,” U.S. Const. amend. V. The Fifth Amendment not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, Minnesota v. Murphy, 465 U.S. 420, 426 (1984), but also it “privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings,” Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). Moreover, a defendant does not lose his or her Fifth Amendment rights when he or she is convicted of a crime. Roberson, ¶ 21. Thus, a probationer retains these rights. Id. 
¶21       These rights, however, are not unlimited. As more fully set forth in Roberson, ¶¶ 22–33, which we also decide today, the Fifth Amendment prohibits only compelled testimony that is incriminating. Testimony is incriminating not only when it would itself support a conviction, but also when it would furnish a link in the chain of evidence needed to prosecute the accused. Id. at ¶ 23. Thus, when a witness demonstrates a possibility of prosecution that is more than fanciful, he or she has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster. Id. 
¶22       Testimony is compelled when the state threatens to inflict “potent sanctions” unless the privilege against self-incrimination is surrendered. Id. at ¶ 32 (quoting Lefkowitz v. Cunningham, 431 U.S. 801, 805 (1977)). Similarly, when a state imposes “substantial penalties” on a witness because he or she has elected to exercise his or her Fifth Amendment rights, the state’s action amounts to compulsion. Id. (quoting Cunningham, 431 U.S. at 805).
¶23       The privilege against self-incrimination, however, “is an option of refusal, not a prohibition of inquiry.” People v. Austin, 412 P.2d 425, 427 (Colo. 1966); accord Feigin v. Zinn, 789 P.2d 478, 480 (Colo. App. 1990). Thus, the privilege may not be asserted as a blanket claim in advance of the questions actually propounded. See Austin, 412 P.2d at 427; Feigin, 789 P.2d at 480; see also Salinas v. Texas, 133 S. Ct. 2174, 2179 (2013) (plurality opinion) (noting that a witness who desires the privilege’s protection generally must claim the privilege at the time he or she relies on it); United States v. Malnik, 489 F.2d 682, 685 (5th Cir. 1974) (“A ‘blanket’ refusal to answer all questions is unacceptable.”) (collecting cases); 2A Charles Alan Wright & Peter J. Henning, Federal Practice & Procedure: Federal Rules of Criminal Procedure § 407, at 71 & n.39 (4th ed. 2009) (same).2
¶24       Allowing the Fifth Amendment privilege to be asserted as a blanket claim in anticipation of questions actually propounded would impermissibly convert the privilege from a constitutionally justified option of refusal into a prohibition against inquiry. Feigin, 789 P.2d at 480.
¶25       Here, the People assert that the division below erred in concluding that requiring Ruch to attend sex offender treatment violated his Fifth Amendment right against self-incrimination. For several reasons, we agree.
¶26       First, as numerous courts have recognized, simply requiring a sex offender to attend treatment is not, in and of itself, incriminating. See, e.g., Huschak v. Gray, 642 F. Supp. 2d 1268, 1282–83 (D. Kan. 2009) (rejecting the defendant’s argument that a sex offender treatment requirement of his mandatory supervised release violated his Fifth Amendment privilege against self-incrimination when the defendant had, in effect, asserted “a general and blanket Fifth Amendment privilege against participating in a sex offender treatment program”); People v. Miller, 256 Cal. Rptr. 587, 589–90 (Cal. Ct. App. 1989) (“The mere requirement of taking [a polygraph] test in itself is insufficient to constitute an infringement of the privilege.”); State v. Widmyer, 313 P.3d 770, 774–75 (Idaho Ct. App. 2013) (concluding that a psychosexual evaluation imposed as a term of probation did not alone violate the defendant’s Fifth Amendment right against self-incrimination because the defendant “had not yet been asked any potentially incriminating questions, and ha[d] failed to establish how attending the treatment program by itself would in any way incriminate him”).
¶27       As the United States Supreme Court made clear in Murphy, 465 U.S. at 435, a state may require a probationer to appear and discuss matters relating to his or her probation, and such a requirement would not alone give rise to a self-executing privilege. That is precisely the case here.
¶28       Second, the Eighth Circuit has recognized that although a state cannot penalize a prisoner for invoking his or her Fifth Amendment privilege against self-incrimination, it may deny benefits like parole if the denial is based on the prisoner’s refusal to participate in rehabilitation and not on the invocation of his or her Fifth Amendment privilege. Doe v. Sauer, 186 F.3d 903, 906 (8th Cir. 1999). In our view, the same principle applies here. Thus, although a state cannot revoke a defendant’s probation for a valid invocation of his or her privilege against self-incrimination, see Murphy, 465 U.S. at 434–35, it may do so when, as here, the defendant did not properly invoke his or her Fifth Amendment privilege but rather completely refused to participate in treatment.
¶29       Third, although Ruch expressed concern regarding what might potentially be asked during sex offender treatment, he had not been asked a single question requiring him to incriminate himself, the probation department had not threatened him with revocation, and nothing in the trial court’s order precluded him from invoking his right against self-incrimination in response to specific questions asked of him during treatment. Again, this case is similar to Murphy, 465 U.S. at 437. There, the Supreme Court concluded that a probation condition requiring the defendant to be truthful with his probation officer in all matters did not violate the defendant’s Fifth Amendment rights. Id. In reaching this conclusion, the Court relied on, among other things, the fact that the probation condition at issue said nothing about the defendant’s freedom to decline to answer particular questions on Fifth Amendment grounds. Id. Nor was the defendant’s probation conditioned on his waiving his Fifth Amendment privilege. Id. 
¶30       The same is true here. Although Ruch’s probation officer indicated that probationers were entitled to deny committing their offenses of conviction for a period of time but would ultimately have to acknowledge the conduct for which they were on probation, neither she nor anyone else from the probation department had threatened to revoke Ruch’s probation, and nothing in Ruch’s probation conditions either addressed his Fifth Amendment rights or required him to waive those rights.
¶31       Finally, to the extent that any questions asked of Ruch in treatment would have related to the sexual assault charge, he could not properly have asserted the privilege against self-incrimination because he had already been acquitted of that charge, and double jeopardy principles prevented him from being re-tried on that count, regardless of what he said in treatment. See People v. Porter, 2015 CO 34, ¶ 9, 348 P.3d 922, 924 (noting that the Double Jeopardy Clauses of the United States and Colorado Constitutions prevent a second prosecution for the same offense after acquittal); Ex Parte Critchlow, 81 P.2d 966, 971 (Cal. 1938) (“The petitioner may not invoke the constitutional privilege [against self-incrimination] when the answers she might give would reveal an offense of which she had been acquitted, for the reason necessarily that the testimony could not [sic] longer incriminate her, and she is not excused from answering.”).
¶32       For these reasons, we conclude that Ruch’s refusal to attend treatment based on his hypothetical concerns as to what might have been asked of him amounted to a blanket claim of privilege in advance of any questions being propounded, and this blanket claim was both ineffective and premature. See Salinas, 133 S. Ct. at 2179 (plurality opinion); Malnik, 489 F.2d at 685; Austin, 412 P.2d at 427; Feigin, 789 P.2d at 480. To hold otherwise would allow most, if not all, defendants who were sentenced to ISP to avoid treatment, at least while their direct appeals are pending, simply by expressing concerns that they might possibly be asked to provide information that could potentially incriminate them. In our view, such a result would be inconsistent with both the settled law discussed above and the General Assembly’s expressed intention that sex offenders who are incarcerated or supervised receive treatment, both to ensure public safety and to facilitate the reintegration into society of those offenders who respond well to treatment. See § 18-1.3-1001, C.R.S. (2015).
IV. Conclusion
¶33 For these reasons, the division’s order is reversed, and the case is remanded with
instructions that the trial court’s order revoking Ruch’s probation and sentencing him to four years in the Department of Corrections be reinstated.

[1]
 We granted certiorari to review the following issues:
 
1.Whether the defendant’s blanket refusal to attend the sex offender treatment program was a legitimate and effective invocation of his Fifth Amendment privilege.
2. Whether the trial court violated the defendant’s Fifth Amendment right against self-incrimination by revoking his probation based on his refusal to attend sex offender treatment.
[2] Some courts have noted a narrow exception to the blanket invocation rule and allow a blanket assertion of privilege when “there is a reasonable basis for believing a danger to the witness [of self-incrimination] might exist in answering any relevant question.” United States v. Thornton, 733 F.2d 121, 126 (D.C. Cir. 1984); accord United States v. Tsui, 646 F.2d 365, 368 (9th Cir. 1981); United States v. Goodwin, 625 F.2d 693, 701 (5th Cir. 1980). We need not address this exception becauseHTML even were we to adopt it, it would not apply on the facts of this case.